Oral argument not to exceed 15 minutes per side. Mr. Grabhorn for the Plaintiff Appellant. May it please the Court, Chief Judge. My name is Michael Grabhorn. I am appearing here today on behalf of Mr. Mark Radell, as well as the putative class. At this time, Your Honor, I would like to request three minutes for rebuttal at the Court's discretion. You may. Thank you. And again, I just... You mentioned the putative class. Have any rulings been made? No. I wanted to address that real quick for the Court. In the Western District, we kind of have a policy that's kind of started to degenerate with respect to class actions, whereby some of the judges, in this case, Judge Russell, Senior Judge Russell, elected to postpone addressing the class issues until we resolved the merits issues. And so, it puts me kind of in an awkward position when I'm before the Court here today. I have to stick to this guy at least. Mr. Radell, and at least make the Court aware that we do have other interested parties. Mr. Grabhorn, before you get deeply into your argument, throughout your brief, you argued for de novo review. Yes, Your Honor. Rather than arbitrary and capricious. And I would just ask you to explain to us why the Barstone language in the plan, why the arbitrary and capricious standard is not mandated in this instance. Okay. I'll be happy to address that. Because with respect to the two issues that I did present to the Court, the first one was the standard of review that the District Court applied. And then, obviously, ultimately, to the merits decision that was made. There's no debate that the U.S. Supreme Court in Firestone said that the default standard of review in ERISA cases is de novo. Unless the plan clearly grants a discretion to the claims administrator, for lack of a better phrase. I don't dispute that that language is in the plan. The dispute that's come up here, though, is when is deference to be afforded to the decision of a plan administrator, claims administrator, even with that language. And in particular, the primary focus, I know there's some other arguments that were made before the District Court, but the primary one I want to focus on for purposes today is that when you have plan terms, unambiguous plan terms, they have to be enforced as written. So, frankly, I don't know necessarily whether we call it, yes, we're doing an arbitrary and capricious review here, or we're doing a de novo review here. I don't think it really matters. Ultimately, the term that we put on it, because the result is the same. The plan terms have to be enforced as written. And I don't think Firestone, or even more recently, Himeshoff, which dealt with contract and more of the accrual of the statute of limitations issue, but I don't believe any of those cases stand for the proposition that a plan can have discretion to alter the meaning of unambiguous terms. It seems your better argument is that it would be arbitrary and capricious to not enforce unambiguous terms. I think that's characterizing it just in the terms of under the ANC standard. And I think either approach still gets us to the same result here. Are the plan terms, were they properly enforced as written or not? As Chief Judge Boggs just noted, even if we're using an ANC standard, the result is still the same. If they have not applied the plan terms as written, if they've added plan terms that aren't there, I think we have a breach of that. So as Judge Boggs said, you'd be better to say that it would be arbitrary and capricious not to enforce the unambiguous plan terms. The question then is, is the plan ambiguous with respect to whether a participant who is eligible for disability retirement benefits is subject to the actuarial reduction for early retirement? Yes. And with respect to posing that as a question, I would say no. I believe the plan terms are clear. The plan here involved, again real quick for the record, and obviously the court is already aware of the issues here, this isn't a risk of plan, it's a risk of pension plan. And pension plans, in large part, obviously have to operate by specific plan documents. In particular, terms in those documents that dictate who can receive a benefit, that's not an issue here. When the benefit is to commence, that is an issue here. The amount of the benefit to be paid when it commences, that's an issue here. And then the form of benefit, whether it's what we call a life annuity for the life of the participant, maybe a joint survivor if they're covering their spouse for a premature death, or maybe a lump sum. But the form of benefit and whether there was eligibility here are not an issue before the court. Those are not in dispute. What is in dispute is whether or not... on the date when he was disabled, even though he was only 52, or was it that he was on disability payment, not retirement, until he reached 55 and more. So the language, I guess that's my question, is that he shall be entitled to receive no less than the pension accrued by him. Is that talking about an amount, or could he have taken retirement the day he was disabled? Section 4 predominantly deals with the amount of the benefit. Section 3 of the plan deals with when it would start. In Section 3, when it first defines the four types of benefits, normal, early, late, and disabled, it actually says, okay, for purposes of when it starts, 4.5 is going to control here, the disability. 4.5, which is the... Make sure I gave you the right one. I just argued another case, and I want to make sure it's 4.5. Now, in answer to your question, I think what you were alluding to was, could Mr. Riddell, could any person under this plan who was disabled, who met the disability, who had the five years of service, and weren't yet 55, is there a contention that they could retire and draw a disability benefit? And the answer to that, I believe the plan supports, is yes. Okay, and how much would that have been in this case? That is, are you relying at all on the no less than the pension accrued? Because probably had he taken it at 52, it would have been considerably smaller, wouldn't it? Right. I think what we get into here, and this was not addressed at the district level, and it's this. Many pension plans, over time, are amended. They're amended because a plan sponsor wants to change benefits, improve, or take away. We have legislative changes, they change vesting rules, and so on. And so over time, what ends up happening, though, we have the minimum standards of ERISA that say you cannot cut back a pension benefit. And so it's not uncommon to see language appear in a pension plan. Whereby, if a change is made as of today, or what is today, August 1, July 31, 2014. If we make a change that's going to be effective August 1, it would be uncommon to see language in the plan that says, you are entitled to no less than the benefit accrued as of July 31, 2014. And I believe that's kind of where this direction of this language goes. It's a minimum benefit, it's not the actual full benefit. The full benefit, we have to look to section 4.1. And 4.1 provides the formula, not the commencement date, the formula to calculate the disability pension. 4.3 says a participant who retires on an early retirement date, and that's what your man did, didn't he? No, he did not, with due respect, John. He retired under a disability date. The plan specifically allows you to apply for normal retirement, age 65. You can apply for early retirement. You have the service, and you're between age 55 and 65. And it calculates this benefit based on 4.1. And in 4.3, the early retirement section talks about the amount of that early retirement, and it tells you how it's going to be reduced. 4.5, on the other hand, has a different date. It's a date that you meet the disability qualifications. You are disabled, you have the service, make application, that goes with that same, the benefits commence. And how are they calculated? They're calculated based on 4.1, that formula. There's no reduction language in 4.5. The pension section talks about your normal retirement date, right? It has to, because it's a normal retirement benefit. By way of example, if we looked at 4.3, if we're just talking about someone taking an early retirement benefit, and you're 55, you have the service, you apply for it, it says you have to calculate it under 4.1. Absolutely. Which says, pension commencing on or after such participant's normal retirement date, which your man was not at his normal retirement date. What I'm getting at is 4.1 tells us the amount of the pension. It says, here's the accrued benefit as of a particular point. When you take an early retirement under 4.3, 4.3 recognizes that, and it says, no, we are not going to make 4.3 equal to that amount. We're not going to calculate the early retirement benefit just on that. We're going to calculate it using that formula in 4.1. However, we're going to then turn to an appendix, appendix A I believe, and we're going to reduce it by a certain percentage all the way down to 55. The problem is that the disability benefit is a separate and distinct benefit under the plan. If we just have someone who retires at age 57, as Mr. Riddell did, and in this context, if he can't draw it before 55, and he can't draw it after 65, how do we give any meaning to this section? It is subsumed. Now, going back to an earlier question, the Chief Judge, you asked, with respect to starting before 55, and I've talked about it in my reply brief, because the plan made an argument that I typically hear in these cases, oh, it's a windfall. If you grant this, it's a windfall. I would state today, it's not a windfall, and I discussed that in depth in the reply brief. Am I correct, however, that a person who was not disabled retiring at the same age with the same years of service as your man would not get as big a pension as you think that your man should get? If the question is, is the early retirement benefit, in my head, lower than the disability, yes. It's a different qualification. It's a different standard under the plan. Now, the pension is different. However, the ultimate economic benefit to the employee is not, because they have a separate welfare benefit plan that provides a long-term disability benefit. The minute you start to receive your disability pension benefit, that long-term disability is reduced dollar for dollar. There is a reduction. There's not a windfall here. So, you kind of posed earlier, why would, or maybe you didn't pose, but it's got to be inferred. If he could have retired, let's say, at age 52, why didn't he? Why did he wait until age 57? You always wait later, because you'll get more money at that time. Well, what ends up happening is because the plan recognizes the service time while he's receiving the long-term disability benefit. He is getting service credit, even though he's not working, because he's disabled. Absolutely, Your Honor. Okay, counsel, I think your time has expired. Thank you for my time. Colleagues have other questions? Okay, thank you. May it please the court, I am Vance Draughty. I represent the Michelin Retirement Plan. Your Honors, the crux of this case are two things, and they fall under plan terms as interpreted under their plain and ordinary meaning and their common sense meaning. There are two things at issue here. One is, what is the eligibility for the disability retirement? What is the eligibility? And then secondly, when can that disability retirement pension benefit begin? Section 4.5 prescribes eligibility. And it says that a participant, while he's an employee, if he meets the three criteria specified in Section 4.5A, if he meets those three criteria, then he is eligible for the disability retirement. Those three criteria are, he's got to become disabled before his normal retirement age, before 65. At the time he becomes disabled, he has got to have at least five years of vested service. And then the point that I believe plaintiff ignores, leaves out, sloughs over, is he has to remain disabled until his early retirement date or his normal retirement date. So he's got to remain disabled. And that's why he can't actually take a pension before he reaches the early retirement date. Precisely, Your Honor. And that, in our case, Mr. Riddell was fortunate in the sense that he was eligible for early retirement because he was age 55 and he had 15 years of service, or excuse me, 10 years of service based upon his date of hire by Michelin. He had that. If he hadn't, he'd have to have waited to his normal retirement date to begin drawing the pension. But what's the benefit? The court asked, or Your Honor, I believe Judge Boggs, you asked about the amount. Well, Section 4.5 says, look, there's a floor here. He is going to be entitled to no less than the pension he has accrued as of the date of disability. So that's point one of what he gets out of 4.5. But as the court noted, in 4.5b, he also gets the service, the period of time that he was disabled, within the meaning of and receiving disability benefits. So he got the benefit. Is it clear what the language you just focused on, receive no less than the pension accrued as of the date he was first disabled, is it clear that he does get more than that? Yes, yes, because he accrued service for the years after he became disabled circa 2006-2007. And it's in the record, Your Honor. Okay, but in order to, and maybe I'm over-thinking this, but is the pension accrued by him as of the date he was first disabled a number that is implicitly reduced by the actuarial factor? That is, you could argue that the pension accrued as of the date he was first disabled, accrued, would be what he would get come normal retirement. Well, I guess... Is that placed in the record anywhere? I don't know that it is. He gets no less than that as of the date of normal retirement. Okay, that's 65. So you implicitly imply that that's also part of that statement. Yes, sir, and here's why, Your Honor, because if you read the next sentence in 4.5 in that first paragraph, it says this pension shall be calculated in accordance with 4.1. So when you go over to... And really the part about calculated according to 4.1 is where the disagreement is about. He says calculated according to 4.1, full stop, never look at the words about normal retirement date or 4.3. You say calculated according to 4.1 means according to everything in 4.1, including normal retirement date. Including commencement of the benefit at normal retirement. That is exactly right, Your Honor. And, Counsel, it seems that both you and your opponent have presented reasonable and plausible and extensive explanations about the interpretation of this plan language in those terms. Doesn't that in and of itself say that there is some ambiguity about how... about the plan language? Your Honor, I would... It's this much in these differing explanations. Your Honor, I would respectfully disagree to have ambiguity under this court's precedent. I don't remember the exact case, but there has to be two equally reasonable interpretations. And Mitchell's position is that plaintiff's interpretation is not reasonable because it, number one, it omits the provision in the eligibility for disability retirement that one has to remain disabled until early, at least early retirement age. And if not eligible for that, then to normal retirement age. And because, as Chief Judge Boggs just noted, it has to take into account the language in 4.1 which says commencement. Commencement at normal retirement age. Well, but doesn't ambiguity still, Judge Donald's position there, doesn't ambiguity still get you a win under Firestone language? I mean, I can understand why you might want no ambiguity, but doesn't it still get an affirmation? Yes, Your Honor, that is correct because there is no dispute about the Firestone language and the delegation of discretion to the Mitchell Pension and Appeals Board. So, yes, Your Honor, that is exactly right. In the end, based upon that delegation of discretion and specifically the ability of the Appeals Pension and Appeals Board to interpret plan terms, I think that is exactly right. So, you know, if there is, Your Honor, we get to the same point. I absolutely agree with that. So, the position, I guess there's two other points I'd like to address that Mr. Grabhorn raised in his comments. Certainly as to the, you know, rendering the disability benefit a nullity by applying the reduction in 4.3, that is just not the case because the, or subsuming it in 4.3, that's not the case because there is no dispute as shown in the record before the court that Mr. Riddell got the benefit. You know, his pension was calculated according to 4.5b. He got the service credit, you know, while he was disabled. Indeed, he could have waited at least a couple more years and gotten even more. It's a total of 35, and he had 33 and change at the time of his disability retirement. 35 is a max? Yes, sir. That's what the plan caps it as that. So, yes, Your Honor, you're absolutely right. So, he could have waited. He didn't have to take this retirement. But the benefit was calculated in accordance with plan terms, and Mr. Riddell got the benefit that 4.5 prescribes. The comment about the LTD offset, I think that's a non-issue because it's two separate plans. The LTD plan is its own plan. It has nothing to do with the calculation of disability retirement under the pension plan. They're two separate plans, two distinct entities. Is that because essentially the LTD is a payment for being disabled while you are, in effect, working and not on retirement? Precisely. It's a shift from one to the other. Yes, sir. That is the policy reason behind that. You're exactly right. So, let me get to 4.3. I take it that there is some possibility that the LTD benefit would be greater than the retirement, and that's why you call it a dollar-for-dollar reduction? I mean, why don't you just say the LTD plan goes away? Well, I have to look at the numbers. I guess it's possible. That's the only reason I could see that you put it that way, but go ahead. Well, I think it's really probably. It could be, but it's usually because, generally speaking, broadly painted, it's because LTD is an income replacement while the person would be otherwise working but for the fact. So, I mean, if a person had a very high income but not too many years of service, the LTD might be higher. It could be very well, Your Honor. Let me talk about 4.3 in the last few minutes of my time here. 4.3 allows a participant to take an early retirement on an early retirement date if he or she, and in Mr. Riddell's case, he did, has 10 years of vested service and he's age 55. So, because of that, Mr. Riddell was actually able to begin the benefit before his normal retirement date. If 4.3B had not been there, he would not have been able to begin his disability retirement pension benefit before age 65. Of course, he would have still accrued service credits up until the maximum of 35 years of credit. But under the clear terms of 4.3B, because he's starting it early, he's electing to commence payment of the benefit early, the plan specifically requires, specifically on its face prescribes that the benefit has to be actuarially reduced. It's in Table A. There are actuarial factors that the actuaries have come up with. 4.3B, right? Yes, sir. It's 4.3B, and those factors have to be taken into account. Say, his argument is that you shouldn't look at 4.3 at all because he's not on early retirement. He's on disability retirement. Well, but if 4.3B were not, or 4.3 were not there, he wouldn't be able to have done what he did. That allowed him to begin taking the benefit when he did. And 4.3 refers to, if you go back to- Disability retirement, in your view, has no aspect of early retirement built into it, standing alone? Well, it has its, not necessarily. It has its own, 4.5, the disability retirement, has its own set of eligibility criteria. And 4.3 actually allows, if one meets that eligibility criteria in 4.5, 4.3 allows that person to begin the benefit on an early retirement date if he's eligible. Let me ask you this. It's a date to begin. We haven't talked about, there's a Section D in that 4.3 that says, a person who has at least 30 years of vested service, and I thought you said he had 33 as of this time, can also get an early retirement supplement of $500 a month. Did he get that? Yes, sir. Okay. He got that. He got his $500 a month. Which presumably he wouldn't have gotten if he wasn't operating under 4.3. Okay. Yes, sir. So, to sum it up, your honors, the 4.3 allowed him to do what he did, which is to elect to commence the disability retirement benefit at age 57 and nine months. He could have done it a little earlier, but as the court noted that he wanted to get, I'm assuming, accrue a little more service, so he did. But under 4.3b, the calculation of the benefit had to be done in actuarial reduction. And that's because the benefit is assumed to have begun under 4.1 at normal retirement age. So, it had to be the amount that he got was actuarially reduced, so it was equal to the normal retirement benefit, but as of the date he began it. So, they back it down based upon the calculations that the actuaries come up with. So, this amount at age 57 and nine months is what would have grown to what he would have gotten at 65 if he had waited that long. So, if there isn't an actuarial reduction at the time he began, 57 years and nine months, he actually would have gotten more actuarially than what he would have been entitled to at 65. So, that's the windfall argument. If you don't actuarially reduce it to make it equal to normal retirement at age 65, he ends up with getting more, a larger benefit, and that's not what the plan states. It's the plan state's normal retirement age for the disability, unless one is eligible for an early retirement date. Your Honors, that concludes my comments, unless the Court has further questions. Thank you, Counsel. Thank you. Grabhorn, you have three minutes for rebuttal. Thank you, Your Honor. If I may, I will address a couple of issues fairly quickly and then I want to hit the primary issue I think that's before us today. Counsel respectfully closed with the windfall discussion, understandably avoided the long-term disability offset issue and instead focused on actual reduction and that sort of thing. I mean, he's absolutely right. A normal retirement benefit, if it's paid in any other form, under the Internal Revenue Code, is required to be the actuarial equivalent. But that's not the end of the story. More often than not, because it costs money to hire actuaries to do these calculations, plans will go out and do what's called a subsidized benefit. We have a BARS Act, we have the TRW line of cases in the Sixth Circuit, all discussing subsidized benefits. Those are rewards to, as an example, since we've been talking about early retirement benefits, to employees who have long service, long history with the company. We want to encourage them and reward them. We also want turnover so we get younger turnover in the workforce. But they're called subsidized benefits by their definition. And this is a protected benefit under the Internal Revenue Code and ERISA. Subsidized benefits are greater value than the normal retirement. It's the nature of it. So just as the early retirement benefit here would be that, so too would be the disability. That's not a contention. What I'm pointing out, though, it's not a windfall in the context of, oh, my goodness, we're trying to read this in such a way that creates something that was unexpected and not planned in the planned terms. I hadn't sort of heard this subsidized benefit before. Is that the same or any different from what happens, let's say, with Social Security? If you take Social Security at 62, you don't get as much as if you wait to 64, 66, 68, which seemed to me to be exactly the same as an actuarial reduction. I have no idea if Social Security has, when they reduce the benefits between 62 and 67 now for full benefits, whether or not that's actuarially done or not. I figure that they put into it, which is similar. Okay, if you don't know, that's fine. Turning real quick to the comment about the long-term disability being somehow a separate program, we have case law that says that the welfare benefit plans that an employer creates, the pension benefit plans, all compose the employee benefit package. We can't sit there and pick and choose which ones we want to focus on and so on, especially from the standpoint, obviously, I do plaintiff litigation, if I'm trying to argue that this particular benefit is not subject to arrest because it's completely employee paid, even though it's part of the package. In the case law, and this hasn't been briefed by either party, I'll be happy to separate. But are we basically right that the LTD plan is primarily key to income replacement, so if you had a very high income person with few years of service, the LTD might be better than retirement? That I don't know. I will say that with respect to any delay, with respect to Mr. Riddell, it was for health reasons as well as for these offsets and it's a financial issue, looking at the fact that the plan... Because every year he doesn't take it, both he gets more service and the actuarial reduction goes down, right? I'm sorry, Your Honor? The actuarial reduction goes down, that is you're a year older, so that the amount of the reduction is less. Yes, the measure between 65 and yes, the closer you get to the less of the reduction. Is it also correct what your adversary said, that they did give him the early retirement supplement? I believe they did. They were putting him under early retirement. I don't know that. I was trying to look through, because that wasn't discussed at the court either, because I don't want to say this, I'd be happy to supplement on that issue. I believe that benefit is paid regardless if you're before age 65. It says 30 years of service, early retirement supplement. I am beyond my time. I would ask the court's leniency for one minute to address the primary issue that I think I want to close with. Which was? Which was this. We have to give meaning here. 4.5 is there for a reason. 4.6 is there for a reason. The summary plan description is there for a reason. I would argue they're not ambiguous, and we have to give meaning to them.  Thank you, Your Court.